IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY BELL, ) | |
| ) | No. 05 C 3746 |
| Petitioner, ) | |
| ) | Judge Mark Filip |
| v. ) | |
| ) | |
| BRADLEY J. ROBERT, ) | |
| ) | |
| Respondent. ) | |

### MEMORANDUM OPINION AND ORDER DISMISSING
### PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Timothy Bell ("Petitioner" or "Bell"), seeks a writ of habeas corpus against Respondent, Bradley J. Robert, Warden of the Centralia Correctional Center ("Centralia") in Centralia, Illinois. For the reasons stated below, Bell's petition for a writ of habeas corpus ("Petition") is respectfully dismissed without prejudice.

### BACKGROUND

Petitioner is imprisoned pursuant to a judgment of the Illinois courts. That judgment followed a bench trial in April 2003 in which Bell was convicted of criminal sexual assault, for which he later was sentenced to a prison term of eight years. (D.E. 8 (amended habeas petition) at 1; D.E.13 at 1.)[1] Bell states that he is due to be released from Centralia on March 2, 2006, and that he could be released sooner if he is awarded good-time credits. (D.E. 14 at 6.)

On July 31, 2003, Bell filed a timely notice of appeal from his conviction in the Illinois courts. (D.E. 14, Ex. B at 6.) For the appeal, Bell initially retained the same private attorney

---

[1] Docket entries are designated as "D.E. ___," followed by the appropriate district court docket number.

who represented him at trial, but, according to Bell's filings in state court, he was unable to make payments to his retained attorney, who then halted work on his appeal. (D.E. 13, Ex. B at 1.) Bell states, in an unsworn statement, that he contacted the "Law office of the public Defender" on March 3, 2004 (or over seven months after he filed his notice of appeal) to assist him in obtaining new counsel. (*Id.* Ex. B at 3, ¶ 7.) Bell also states that he submitted a letter dated March 12, 2004, addressed to the appellate court, that requested appointed counsel (specifically the Appellate Defender) because his retained counsel was ineffective at trial. (D.E. 14, Ex. D at 2.) This letter was not stamped "Received" by the appellate court (*see id.*), nor does it appear on the docket sheet. (*See id.*, Ex. B.) Petitioner states that he filed a motion for appointment of counsel on June 1, 2004 (D.E. 14 at 4); the appellate court denied the motion on June 9, 2004.[2] (*Id.*, Ex. B at 7.)

On June 10, 2004, the appellate court dismissed Bell's appeal for want of prosecution, explaining that he had violated Illinois Supreme Court Rule 326, in that he failed to file the record on appeal within the prescribed time period. (D.E. 13, Ex. C.) On June 30, 2004, Petitioner filed a petition for rehearing in the appellate court, asking that his appeal be reinstated and that the court appoint him new counsel. (*Id.*, Ex. B.) On July 16, 2004, the appellate court granted Bell's petition for rehearing, reinstated his appeal, and appointed the Office of the State Appellate Defender ("Appellate Defender") to represent Bell. (*Id.*, Ex. D.) Petitioner also filed a motion for transcripts that appears to have been filed on July 23, 2004, and that was denied on

---

[2] This motion may have been the letter dated March 12, 2004, or it may have been a formal motion or a motion initiated on the appellate court's own initiative. Either way, the June 1, 2004 "special order appointment of counsel" entry and the June 9, 2004 "special order appt of counsel denied" are the first docket entries concerning any issue of appointment of counsel. (*See* D.E. 14, Ex. B at 7.)

2

July 28, 2004. (D.E. 14, Ex. B at 7.)

On September 7, 2004, the Appellate Defender requested that the Clerk of the Circuit Court of Cook County (the "Clerk") prepare the record and ordered transcripts from 23 days of trial proceedings. (D.E. 13, Ex. E at 1, 3-4.) The common law record was delivered to the Appellate Defender on September 14, 2004. (D.E. 14, Ex. B at 7.) The Court Reporter filed the trial transcripts with the Clerk on May 2, 2005. (D.E. 13, Ex. G at 3.) In the interim, the Appellate Defender filed five motions for extension of time; the appellate court ultimately granted all five motions. (*Id.*, Ex. F.) Although the transcripts were filed on May 2, 2005, it appears that the Clerk certified the transcripts on August 13, 2005. (D.E. 13 at 3.) As is the Appellate Defender Office's policy, once the transcripts were certified, the Appellate Defender assigned Bell an attorney, who began analyzing the record and identifying issues for appeal. (*See, e.g.*, D.E. 14, Ex. F at 3.)

Petitioner also filed a request for an investigation of his appointed counsel with the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois (the "Commission"). This request was denied on March 17, 2005; the Commission concluded that "there is not a sufficient basis for this agency to pursue charges of professional misconduct." (*Id.*, Ex. C at 1.)[3]

In June 2005 and August 2005, Petitioner filed a *pro se* petition for a writ of habeas corpus and an amended petition for writ of habeas corpus in federal court, pursuant to 28 U.S.C. § 2254. (D.E. 1, 8.) The gravamen of the petitions was that Illinois had unduly delayed the

---

[3] Petitioner claims that he filed a complaint with the Commission concerning his former, retained counsel, Michael Greco. Petitioner may or may not have filed additional ARDC complaints concerning Greco, but the ARDC complaint included in the record was lodged against Petitioner's appointed counsel from the Appellate Defender's Office. (*See* D.E. 14 at 3; *id.*, Ex. C at 1-2.)

3

adjudication of Bell's direct appeal, combined with a request that the federal courts instead adjudicate in the first instance those claims that otherwise would proceed in the Illinois appellate courts. (*E.g.*, D.E. 1 at 5; D.E. 8 at 3.) At the Court's direction, the State was ordered to promptly file a limited answer, addressing only the exhaustion issue. (D.E. 10.) The State answered in late August (D.E. 13). Bell filed a lengthy response to the State's answer (D.E. 14), and the State replied to that filing. (D.E. 15). The parties' filings reflect that in the time since the habeas petitions were filed, the Appellate Defender appointed an attorney who has reviewed the record and filed an appellate brief. (*E.g.*, D.E. 15 at 2-3.) The filings also explain that the appeal has been given top priority by the Appellate Defender pursuant to its uniform office policy, which prioritizes the oldest cases first. (*E.g.*, D.E. 13 at 3; D.E. 14, Ex. F at 1; D.E. 15 at 3.) Since the time when the limited answer was filed, the appellate court has set a briefing schedule for Bell's appeal. Petitioner filed his opening brief for the direct appeal on October 11, 2005, and the response brief is due December 27, 2005.[4] In the Illinois Court of Appeals, reply briefs are typically due 14 days after the filing of response briefs, so the briefing cycle in the case should be completed within the next several weeks. *See* Ill. Sup. Ct. R. 343, 612.

I.   Standard of Review

A district court typically may not provide habeas relief unless the petitioner has exhausted his available remedies in state courts, 28 U.S.C. § 2254(b), and any petition containing unexhausted claims must be dismissed or stayed. *See, e.g., Rhines v. Weber*, ___ U.S. ___, 125

---

[4]   The briefing schedule was confirmed by Petitioner's attorney at the Appellate Defender's Office, and also confirmed by the Clerk of the Illinois Court of Appeals, who provided a copy of the appellate court docket. The Court takes judicial notice of the appellate court docket sheet. (D.E. 17); *accord Clark v. McVicar*, No. 95 C 2039, 1995 WL 769763, *9 (N.D. Ill. Dec. 28, 2005) (Castillo, J.) (taking judicial notice of Illinois Appellate Court docket sheet in habeas case) (citing Fed. R. Evid. 201).

4

S. Ct. 1528, 1535 (U.S. Mar. 30, 2005). Exhaustion occurs when the petitioner has fairly presented his claim to the state courts by arguing both the federal legal principles and the salient and operative facts of the claim, thereby giving the state courts a "meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001) (collecting cases) (internal quotation marks and citation omitted). Exhausting all state remedies includes presenting each claim on appeal to the Illinois appellate court and in a petition to the Illinois Supreme Court for discretionary review. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003) (holding that the rule applies for purposes of habeas corpus under Section 2254).

Exhaustion is not required, however, when the state does not make a corrective process available, or when the available process is ineffective to protect a petitioner's rights. 28 U.S.C. § 2254(b); *Sceifers v. Trigg*, 46 F.3d 701, 703 (7th Cir. 1995). A sufficiently undue or inordinate delay in the state proceedings may make the available state remedies ineffective. *See id.; Jenkins v. Gramley*, 8 F.3d 505, 508 (7th Cir. 1993). Caselaw reflects that there is no bright line as to what constitutes undue or inordinate delay, and that a case-sensitive assessment is required, including, at times, a hearing to explore sufficiently undue and unexplained delays. *See generally Lane v. Richards*, 957 F.2d 363, 365 (7th Cir. 1992) (declining to require hearing where one was not required to evaluate material issues).

If a petitioner has not exhausted the available state remedies, the Court typically dismisses "his habeas petition without prejudice so that the petitioner may return to state court in order to litigate the claim." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). The rule against successive petitions does not bar a petitioner from refiling once he exhausts his available state remedies. *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 644 (1993) (stating that no

cases hold that "a prisoner whose habeas petition was dismissed for failure to exhaust state remedies, and who then did exhaust those remedies and returned to federal court, was by such action filing a successive petition"); *see id.* ("[a] court where such a petition was filed could adjudicate these claims under the same standard as would govern those made in any other first petition").

Dismissal is the typical response to a petition filed prior to exhausting the available state remedies; however, the Court may, in the interest of comity or judicial economy, deny a habeas petition on the merits. 28 U.S.C. § 2254(b); *see also Granberry v. Greer*, 481 U.S. 129, 134-35 (1987).

II. Issues Raised in the Petition

Petitioner admits that he has not exhausted his available state remedies; instead, he argues exhaustion is not required because Illinois's delay in adjudicating his appeal has made the available state process ineffective to protect his rights. (D.E. 14 at 1.)

A threshold question is the state's responsibility for the delay; if the delay cannot be attributed to the state, then the state's process cannot fairly be considered ineffective for the purposes of Section 2254(b). *See Sceifers*, 46 F.3d at 703-04. Petitioner argues that the delay in adjudicating his direct appeal can be attributed to the state for four reasons. First, Petitioner argues that he has a constitutional right to effective counsel on direct appeal, and that right was denied when his first retained attorney withdrew from the case, such that the delay should be attributed to the State of Illinois. (D.E. 14 at 4-5.) Second, and relatedly, Petitioner claims that the state courts failed to give proper consideration to a number of motions that he filed while he was waiting for his attorney to work on his appeal; consequently, those delays should also be attributed to the state. (*Id.* at 3-4.) Third, Petitioner argues that the delay in preparation of the

6

transcript should be attributed to the state because "[t]he Official Court Reporter is a State employee and his or her actions can never be controlled by the petitioner!!!" (*Id.* at 5.) Finally, Petitioner argues that the lack of exhaustion should be excused because "the Appellate Defender has informed the petitioner that it will be as long as an additional twelve months before the Appellate Court renders its decision!" (*Id.* at 6.) In this regard, petitioner notes that he "will complete his sentence and be released from prison on March 2, 2006." (*Id.*)

The Seventh Circuit has at least suggested that the delay resulting from Petitioner's defense counsel cannot constitute ineffective state process under Section 2254(b). *See Lane v. Richards*, 957 F.2d 363, 365 (7th Cir. 1992) (under common law, a lawyer's acts are attributed to the client, not to the adversary); *id.* at 367 (Eschbach, J., dissenting) (describing majority opinion as establishing a "new rule of law that a lawyer's delay cannot constitute ineffective state process under section 2254(b), even if that lawyer is a state-appointed and state-paid public defender who is not acting in her client's best interests. According to this rule, the reason is irrelevant because the public defender is the petitioner's agent and her errors cannot be attributed to the state."). The Court need not determine whether counsel-induced delay could never constitute ineffective state process in all circumstances, because even if it can, the delay in this case is materially the product of petitioner's retained counsel.

In order to demonstrate a due process violation, Petitioner must demonstrate both the existence of a state law providing for a direct appeal as a matter of right and state action depriving him of due process of law. (Precedent teaches that a criminal defendant has no constitutional right to a direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 393 (1985); *accord, e.g., McKane v. Durston*, 153 U.S. 684 (1894). However, once a state provides for an appeal as a matter of right, it cannot deprive a person of the right of appeal without due process of law. *See*

*Evitts*, 469 U.S. at 393.) Petitioner satisfies the first requirement—the right to appeal a criminal conviction is guaranteed by the Illinois Constitution. Ill. Const. 1970, art. VI, § 6; *People v. Perez*, 450 N.E.2d 870, 874 (Ill. App. Ct. 1983). However, Petitioner fails to prove state action—at least as to the lion's share, if not all, of any atypical delay associated with the adjudication of his direct appeal in the state courts. After he was convicted, Bell retained counsel rather than obtaining free representation from the Appellate Defender (D.E. 13, Ex. B at 3). Consequently, any errors made by retained counsel prior to the dismissal of his appeal are not attributed to the state because Petitioner could have fired his private attorney and requested appointed counsel. Or, put differently, the state is only responsible where it deprives a criminal defendant such as Petitioner of due process of law, and the state was not responsible for actions of petitioner's retained counsel.[5]

If there was a due process violation from ineffective assistance from Petitioner's choice of retained counsel, it likely first occurred when Petitioner's appeal was dismissed; prior to the point of dismissal, there was no state action. *See Sceifers*, 46 F.3d at 704 (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 n.6 (1982)); *see also id.* ("Indeed, the actions of Sceifers' deputy public defenders and appointed counsel, which caused the delay, do not constitute state action.

---

[5] As explained in detail above, even under Petitioner's view of things, the State had no basis to even suspect any delay caused by Petitioner's retained counsel from July 2003 (when the notice of appeal was filed) to March of 2004—when Petitioner claims, without any support in the record and in substantial tension, at least, with the purported documents on which he would rely, that he wrote to the Illinois Court of Appeals with complaints about his retained counsel. Petitioner, of course, was appointed counsel in the form of the Appellate Defender on July 16, 2004, or roughly six weeks after there is any indication in the appellate court record that Petitioner actually raised the issue with the Illinois Court of Appeals. In any event, even if one assumes *arguendo* that Petitioner did contact the Illinois Court of Appeals in March 2004, notwithstanding that the proffered documents do not support that position, the lion's share of any atypical delay is attributable to private counsel under circumstances in which the State was not even on notice of any potential problem.

8

*See Polk County v. Dodson*, 454 U.S. 312, 317 n.4 (1981) (holding that 'a public defender does not act under color of state law when performing the traditional functions of counsel to a criminal defendant').").[6] Petitioner conceivably might have, in one sense, been denied due process of law when his appeal was dismissed (assuming ineffective assistance from Petitioner's retained counsel), but the appellate court reinstated Petitioner's appeal thirty-six days later, which cured the alleged constitutional violation. *See People v. Thomas*, 686 N.E.2d 1196, 1198 (Ill. App. Ct. 1997) ("When a defendant is deprived of his right to appeal by a court appointed attorney who fails to file a notice of appeal, the proper remedy is to allow a late notice of appeal to be filed; the restraints limiting what is normally cognizable under the Act are not applicable in this situation.") (citation omitted). When the appellate court reinstated Petitioner's appeal, it also granted his request and appointed the Appellate Defender to represent him. Thus, the period from July 2003 until at least June 2004 (when the appellate court dismissed the case for failure to comply with Illinois Supreme Court Rule 326), at a minimum, cannot fairly be attributed to the State of Illinois, when any fault would be the product of a private attorney that Petitioner selected.[7]

Petitioner relatedly claims that the state is responsible for the delay in this case because

---

[6]   It is worth noting that *Polk County v. Dodson*, 454 U.S. 312 (1981), involved an analysis of representation by the Offender Advocate for Polk County for Mr. Dodson's appeal of his criminal conviction in the state appellate courts. *See id.* at 318 ("In this case the Offender Advocate for Polk County assigned Martha Shepard to represent Russell Dodson in the appeal of his criminal conviction. This assignment entailed functions and obligations in no way dependent on state authority.").

[7]   Again, it is conceivable that some non-material adjustment to this timeline could be possible, if Petitioner in fact contacted the Illinois Appellate Court in March 2003. However, as explained further below, Petitioner nowhere explains or even argues as to how the Illinois Court of Appeals *erred* in denying any such request for appointment of counsel prior to the time that the Illinois Court of Appeals actually appointed the Appellate Defender, which office then began working with reasonable diligence and has continued to do so.

"every motion for appointment of counsel was denied, as was petitioner's *pro se* motion for trial transcripts and common law record." (D.E. 14 at 4.) However, Petitioner does not demonstrate that the state was inordinately slow in addressing these motions. For example, Petitioner states that he moved for appointment of counsel on June 1, 2004 (D.E. 14 at 4); that motion was initially denied on June 9, 2004. (*Id.*, Ex. B at 7.)[8] Petitioner does not indicate on what date he filed the motion for transcripts that was denied on July 28, 2004, although the docket sheet from the Illinois Court of Appeals suggests that Petitioner filed a motion for transcripts on July 23, 2004. (D.E. 14, Ex. B at 7.) Under either scenario, Petitioner has failed to show that the Illinois courts unduly delayed in addressing his transcript request. Nor does Petitioner even attempt to explain why the appellate court was in error when it denied his motions. Courts typically have threshold requirements for motions such as requests for appointment of counsel—for example, requirements to file affidavits of indigency so as to ensure that public resources are not being squandered inappropriately, *see generally Zaun v. Dobbin*, 628 F.2d 990, 993 (7th Cir. 1980) (discussing indigency showing required under various circumstances in federal courts)—and Petitioner offers no reason to believe that the Illinois appellate court's rulings on his motions were erroneous or an abuse of discretion.[9] Given that Petitioner had retained counsel at the trial

---

[8] Bell's petition for rehearing, filed June 30, 2004, led to the appointment of the State Appellate Defender for him on July 16, 2004. (D.E. 13, Exs. B & D.)

[9] The applicable Illinois rule, Ill. Sup. Ct. R. 607(a), provides that "the trial court shall determine whether the defendant is represented by counsel on appeal. If not so represented, and the court determines that the defendant is indigent and desires counsel on appeal, the court shall appoint counsel on appeal." Bell was represented by private counsel at trial and it appears that his initial plan was to use the same attorney for his appeal. (*See* D.E. 13, Ex. B at 1.) Consequently, the trial court would have had no reason to provide Bell with appointed counsel or make further inquiries under Rule 607.

level, there is no basis even to think that the appellate court could have responsibly assumed, based on verified papers presented in the trial court at a different time, that Petitioner likely qualified for appointed counsel.[10]

Petitioner's third argument is that the post-appointment delay is attributable to the state because the persons responsible for the delay—the Court Reporter and the Clerk—are state employees. (D.E. 14 at 5.) While some of the delay in the preparation of the transcripts *might* be "fault" that one might attribute to the state, Petitioner (and his retained counsel) materially contributed to the delay by failing to make a proper request for the transcripts until eighteen months after the trial ended. After the Appellate Defender's Office was appointed, the transcripts were requested in a reasonably timely fashion (approximately six weeks' time). (D.E. 13, Ex. E at 1, 3-4.) Even in federal court, voluminous transcripts can take a substantial amount of time to prepare accurately. Precedent acknowledges that the normal pace of appellate litigation can be time-consuming, such that a federal district court should be appropriately modest before considering the amount of public funds that a state legislature has devoted to court reporter services to be constitutionally inadequate (within the universe of competing demands on limited public funds, such as, for example, infant and senior health care, public education, and homeland security) such that a fundamental transformation of the federal-state habeas corpus framework is warranted. *See Wilson v. Rowe*, 454 F.2d 585, 587 (7th Cir. 1972) ("The principal, if not the only, complaint is that the state procedure is time-consuming. We do not find this to be

---

[10] The Court has not been presented with any authority that suggests that the appellate court was required to locate and review the trial court record in this regard, or to speculate about Petitioner's entitlement to appointed appellate counsel based on papers filed some meaningful period of time earlier. Nor does the Court suggest that such a rule of law or duty existed. The Court simply notes that in this case, no basis or reason has been provided even to suggest that documents were in the appellate record reflecting that Petitioner was indigent at any time and therefore entitled to appointed counsel at any point during the proceedings in the case.

11

a *per se* reason for federal intervention."); *id.* ("The answer does not lie, in our opinion, in the procedure here proposed which would tend to make the federal courts appellate reviewing courts of state criminal procedures. This is an office which federal habeas has not been, and is not intended to be, designed to serve."); *see also Ad Hoc Comm. on Judicial Admin. v. Commonw. of Mass.*, 488 F.2d 1241, 1245-46 (1st Cir. 1973) (Campbell, J.) (rejecting claim that alleged failure of Massachusetts, its governor, and its state legislature to provide adequate "court facilities, judges, clerical personnel, and other facilities" violated the Sixth and Fourteenth Amendments, and stating that, "in this nation, the financing and, to an important extent, the organization of the judicial branches, federal and state, have been left to the people, through their legislature. While state courts have on rare occasions ordered the provision of assistance from the other branches, when they deemed their very capacity to continue functioning at stake, it would be both unprecedented and unseemly for a federal judge to attempt a reordering of state priorities.") (internal citation omitted). While the Court is not unsympathetic to Petitioner's frustration with the length of time it took to prepare transcripts of his trial, that delay was exacerbated by the belated nature of the request for the transcripts, and the Court is not persuaded that the delay, under the circumstances, warrants displacement of presumptive state appellate review mechanisms. *See generally Perruquet*, 390 F.3d at 514 (explaining that the exhaustion requirement is grounded in principles of federalism and comity between state and federal courts); *Ward v. Hinsley*, 377 F.3d 719, 726 (7th Cir. 2004) (same, and further emphasizing that "State courts have 'initial responsibility for vindicating constitutional rights' in state criminal trials") (quoting *Engle v. Isaac*, 456 U.S. 107, 128 (U.S. 1982)).

Petitioner's final argument is that future delay is attributable to the state because the appellate court will take another year to resolve his appeal, which will extend the proceedings

beyond his expected date of release from prison. (D.E. 14 at 6.) However, this situation, again, is in material part the product of delays prompted by Petitioner's retained counsel. At the present time, briefing is ongoing in the Illinois Court of Appeals and the case is proceeding according to schedule. Petitioner suggests that time is of the essence because of his impending release from prison, but since he is challenging his conviction, not the length of his sentence, his appeal would not be mooted by his release from prison. *See, e.g., A.M. v. Butler*, 360 F.3d 787, 790 (7th Cir. 2004). So, while the Court appreciates that Petitioner would like the case to be decided sooner, this further mitigates against displacing normal state review processes. Furthermore, while Petitioner might have raised questions about whether some modest portion of the prior delay in addressing his appeal is possibly attributable to the state (for example, some portion, perhaps, of the trial transcription time), he does not demonstrate that a one-year process to adjudicate his direct appeal constitutes "undue" or "inordinate" delay. A one-year time period to process a direct appeal is not inordinate because, as the Seventh Circuit has instructed, the "normal direct appellate procedure extends ordinarily over a substantial period of time." *Wilson*, 454 F.2d at 589 (discussing Illinois appellate process for criminal cases). Even federal criminal appeals often take eight to ten months from date of argument to the date that an opinion issues—not because there is a deprivation of due process of law going on, but because the process of thoughtfully reviewing briefs, studying relevant caselaw, and analyzing issues in writing takes time. That federal time frame—in which, again, it is not uncommon for an opinion to issue eight to ten months or more following argument—expands substantially if one includes the time period required and allowed for responsible and thorough briefing of the case, and for preparation of transcripts and the normal process of docketing the case and scheduling an argument.

As explained above, it took some eleven and a half months in this case from the time that

13

the Appellate Defender requested transcripts for certified transcripts to be made available. Voluminous transcripts were requested (23 days of proceedings), and they were requested far later than they could have been by Petitioner's private counsel of choice. However, even if the transcripts could have been produced and certified somewhat more quickly, any delay attributed to the state (even if one includes all the other potentially unexplained or unexplained delays, and resolving all factual issues in Petitioner's favor) is well under one year. In the Seventh Circuit, seventeen months is the shortest period of time that has been deemed potentially "inordinate" such that a hearing was required to see if delay was undue and federal intervention potentially appropriate; shorter periods of delay have not been found to make the state process ineffective. *Compare Dozie v. Cady*, 430 F.2d 637 (7th Cir. 1970) (seventeen-month delay, in which briefing deadlines apparently had not even been set, sufficient to require hearing to determine if unexplained delays were inordinate and sufficient to justify federal courts to decide claims) *with Frederick v. Leik*, No. 93 C 429 (W.D. Wis.), Order of July 19, 1993 (dismissing habeas petition and finding that fourteen months was not undue delay), *aff'd*, 46 F.3d 1133 (7th Cir. 1995) (unpublished); *see also Varner v. Duckworth*, No. 95 C 1322 (S.D. Ind.), Order of Nov. 13, 1995 (dismissing habeas petition because eight-month delay prior to filing of habeas petition before requisite evidentiary hearing in state court was even held did not make state process ineffective), *aff'd*, 96 F.3d 1450 (7th Cir. 1996) (unpublished); *Miller v. Parke*, No. 95 C 530 (N.D. Ind.), Order of August 15, 1995 (dismissing habeas petition because seven months not inordinate delay), *aff'd*, 89 F.3d 838 (7th Cir. 1996) (unpublished).

Furthermore, even if the past delay was inordinate (which the filings indicate it was not, at least in a way unrelated to the actions of Petitioner's privately retained counsel), the state has resolved the delay and Petitioner's appeal is moving forward with reasonable expedition. In

addition, the Appellate Defender (which, again, is not even the state) has prioritized Petitioner's appeal. The assigned attorney has filed an opening brief, and the complete merits briefing should be done within the next several weeks. (D.E. 17.) The causes of the past delays have been identified and eliminated, and the only remaining delays are due to the ordinary slowness of litigation. Petition has failed to cite a single case, from any court, where the state court appellate litigation was actively progressing towards resolution (seemingly here even on an expedited basis, as the Appellate Defender filed Petitioner's brief six weeks before it was due), following a delay attributable at least in substantial part to a criminal defendant's privately retained counsel of choice, and a federal court intervened so as to begin resolving at least the federal issues otherwise properly before the state courts. *See generally Wilson*, 454 F.2d at 589 (stating that no case "has found exhaustion of state court remedies in a case where a direct state appeal was pending and the delay if any in the normal procedures of direct appellate review at the state level was then resulting from the failure to file the appellant's brief."). As indicated, federal intervention is a step that must be taken with caution, because federal courts cannot serve as *ad hoc* state appellate courts, at least without substantially undermining their ability to address federal criminal cases with appropriate expedition (*see, e.g.*, U.S. Const., Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."); 18 U.S.C. § 3161, *et seq.* (Speedy Trial Act)) and discharge their responsibilities in other cases as well. *See generally Perruquet*, 390 F.3d at 514 (explaining that exhaustion requirement promotes efficient analysis of state prisoners' claims); *Ward*, 377 F.3d at 726 (explaining that state courts are intended to be the front-line vindicators of federal constitutional claims concerning state criminal proceedings). Again, the Court is not unsympathetic to Petitioner's frustration, nor would the Court offer this case as an example of how the state appellate process

can best proceed. However, Petitioner's arguments do not establish that a fundamental breakdown of due process has occurred, and is attributable to the courts of the State of Illinois, such that federal intervention is appropriate in this case.

Petitioner's cited authorities do not suggest a different result. For example, Petitioner cites *Story v. Kindt*, 26 F.3d 402 (3d Cir. 1994), and *Wojtczak v. Fulcomer*, 800 F.2d 353 (3d Cir. 1986). (*See* D.E. 14 at 2.) However, those cases involved unexplained delays in the available state processes of nine years and 33 months, respectively, before the petitioners sought federal habeas relief, periods well beyond any unexplained or other delays putatively attributable to the state here. *See Story*, 26 F.3d at 403; *Wojtczak*, 800 F.2d at 354. Petitioner also repeatedly cites *Green v. Washington*, 917 F. Supp. 1238 (N.D. Ill. 1996)—see D.E. 8 at 3; D.E. 14 at 1, 5-6—but that (non-precedential) case does not apply, even on its own terms. The ultimate resolution in *Green* is not clear from the cited opinion, as the cited opinion was issued during the middle of what appear to have been protracted proceedings that extended beyond the cited authority. Nonetheless, in the cited opinion in *Green*, it appears that Judge Shadur at least contemplated ordering the Illinois Court of Appeals to make sweeping *pro bono* appointments so as to alleviate staffing issues concerning the Appellate Defenders' Office, prompted in part, it appears, by Judge Shadur's view that the Illinois General Assembly had not appropriated sufficient funding for that office. *See id.* at 1280 & n. 9; *see also id.* at 1278 ("To be sure, the core offender has been the Illinois General Assembly . . . ."). In the instant case, the Appellate Defender has moved expeditiously once it was appointed. The Appellate Defender quickly ordered the record and, once the record was available, analyzed it with reasonable (yet not seemingly reckless) haste. In addition, the state appellate court docket sheet suggests that the Appellate Defender filed the opening brief on appeal some six weeks before it was actually due.

(D.E. 17.) As a result, the concerns about funding and staffing at the Appellate Defender's office that drove Judge Shadur's non-precedential opinion would not seem to be implicated in this case.

The Court may, in the interests of comity and/or judicial efficiency, decide a petition on the merits even if the available state remedies have not been exhausted. With respect to comity, it appears that Petitioner's direct appeal is finally moving forward with reasonable speed; the causes of the delay have been addressed and Petitioner has filed his opening brief. Furthermore, if this Court attempted to reach a decision on the merits, it would result in further delay, as the State has only filed a limited answer and the Court has not been provided by either party with either the common law record or the trial transcripts, both of which are essential in assessing at least one of Petitioner's claims.

It also is worth noting that at least one of Bell's claims of error suggested by his papers—that he "was prosecuted in violation of the Illinois Statute of Limitations" (D.E. 8 at 4)—presents potential questions of state law, which are not cognizable in federal habeas corpus proceedings, even if Bell were relieved of the exhaustion requirement. *See Jackson v. Duckworth*, 112 F.3d 878, 881 (7th Cir. 1997). The other claims suggested by Bell's filings—including sufficiency of the evidence (D.E. 14, Ex. A at 1) and the related extensive claim that the testimony of the sexual assault victim was not credible (*id.*, Ex. A at 1-3), and a putative ineffective assistance of trial counsel claim (*id.*, Ex. A at 2-3)—are claims that are more readily analyzed through a federal lens, but they are claims that are made more often than not by litigants in state court criminal litigation. As the Seventh Circuit has stated, federal courts in Illinois could not readily adjudicate a states' worth of such claims, even if the federal courts did nothing else. *See Rowe*, 454 F.2d at 587 (condemning a scenario of ready bypass of state appellate review, "which would tend to make the federal courts appellate reviewing courts of

17

state criminal procedure," and stating that "[t]his is an office which federal habeas has not been, and is not intended to be, designed to serve"). Moreover, it does not seem sensible to begin parallel, piece-meal litigation of Bell's state and federal claims in this case, particularly given that the delay of the adjudication of Bell's claims is substantially the product of delays relating to the alleged shortcomings of his privately retained appellate counsel. *See id.* Thus, it is not in the interests of comity or efficiency for the Court to require the parties to begin merits briefing in this district court so as to resolve some (but likely not all of) Petitioner's claims on the merits at the same time that the state appellate court is reviewing and deciding the case.

The Court also concludes that dismissal without prejudice is appropriate. Dismissal without prejudice is particularly appropriate in cases where the petitioner makes a non-frivolous allegation of undue delay in adjudicating a direct appeal; a strict application of the rule against successive petitions would put petitioners in the difficult position of foregoing any future federal habeas relief in order to prod the state into adjudicating their direct appeals. The Court concludes that dismissal without prejudice is appropriate on the facts of the case.

## CONCLUSION

For the reasons stated above, federal habeas relief is not warranted at this juncture. Consequently, the Petition for a writ of habeas corpus is denied without prejudice.

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: 11-29-05

18